**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

**GOVERN GPT, INC.** *and* **MOHAMMED AMINI**,

       *Plaintiffs,*

       **v.**

**MARCO RUBIO**, **PAMELA BONDI**, *and*
**BAXTER HUNT**, *in their official capacities*,

       *Defendants.*

**Case No. 1:24-cv-2855-RCL**

<u>**MEMORANDUM OPINION**</u>

       After Plaintiff Mohammed Amini, a national of Iran and a resident of Canada, applied for an O-1 non-immigrant visa, the U.S. Consulate in Toronto refused his application under Section 221(g) of the Immigration and Nationality Act ("INA") for further administrative processing. Now, Amini and his employer, Plaintiff Govern GPT, Inc. (together, "the plaintiffs"), bring this lawsuit against Secretary of State Marco Rubio, Attorney General Pamela Bondi, and U.S. Consul General of the U.S. Consulate in Toronto Baxter Hunt (collectively, "the defendants"), alleging that the defendants have unreasonably delayed the resolution of Amini's visa application. The plaintiffs seek a writ of mandamus and declaratory and injunctive relief under the Administrative Procedure Act ("APA"). Before the Court is the defendants' Motion to Dismiss for lack of standing and failure to state a claim. *See* [ECF No. 9]. Because the Court agrees that the plaintiffs have not identified a non-discretionary duty for the defendants to take further action, the defendants' motion will be **GRANTED** by separate order and the case will be **DISMISSED**.

## I.    BACKGROUND

### a.  Key Facts

The Court draws the following facts from the well-pleaded allegations in the plaintiffs' Complaint and accompanying exhibits.

Plaintiff Mohammed Amini is a native and citizen of Iran and a lawful permanent resident of Canada.  Compl. ¶ 16, ECF No. 1.  He is a founder of Govern GPT, a startup incorporated in Delaware and backed by Y Combinator, a California-based tech incubator.  Compl. ¶¶ 15, 52–54; Ex. F to Compl. at 12, 16, ECF No. 1-1.

On October 12, 2023, Govern GPT filed a non-immigrant worker petition, Form I-129, seeking an O-1 visa on Amini's behalf.  Compl. ¶ 21.  U.S. Customs & Immigration Services ("USCIS") approved the petition four days later, on October 17, 2023.  *Id.*  Amini promptly completed an online non-immigrant visa application, Form DS-160, on October 19, 2023, and the U.S. Consulate in Toronto scheduled an in-person interview to take place approximately two weeks later, on November 3, 2023.  *Id.* ¶¶ 22–23.

The interview occurred as scheduled.  During the interview, Amini was issued a "Notice of 221(g) Refusal."  *Id.* ¶ 24; Ex. E to Compl. at 7, ECF No. 1-1.  The notice explained that Amini's "visa application [had been] refused under section 221(g) of the Immigration and Nationality Act."  Ex. E at 7.  It further stated that "[a]dditional administrative processing [was] required on [Amini's] case" and that "[n]o further action [was] required on [his] part."  *Id.*  Amini and his representatives corresponded with the office of Congresswoman Anna Eshoo of California regarding the status of his visa application in February and March 2024.  *See* Compl. ¶ 25.[1]  After

---

[1] The Complaint states that this correspondence occurred in 2023, but that appears to be a typographical error.  The header information in the underlying email correspondence, attached as Exhibit F to the Complaint, makes clear that the relevant correspondence occurred in early 2024.

a constituent liaison contacted the State Department, Congresswoman Eshoo's office advised the plaintiffs that "administrative processing" for Amini's application hadn't "cleared" and that the State Department was "unable to give a timeline" for when processing would be complete. *Id.*; *see also* Ex. F to Compl. at 12, ECF No. 1-1.  In May 2024, Amini corresponded with the Nonimmigrant Visa Unit of the Toronto consulate for an update on the status of his application. Later that month, the consulate provided the following response:

> Your nonimmigrant visa application was refused under Section 221g of the Immigration and Nationality Act (INA), as amended, for a legally mandated administrative processing.  The U.S. Consulate in Toronto **has no control over the pace** or scope of that process, and we are unable to determine when this process may be concluded. Please be aware that <u>this will take several months.</u>  While we are sensitive to the inconvenience caused to applicants who are subject to this review, we must follow U.S. law and wait for a response before we can continue processing your application.

Ex. G to Compl. at 17, ECF No. 1-1.  This litigation ensued.

### b. Procedural History

The plaintiffs filed a three-count Complaint on October 7, 2024, approximately five months following the foregoing correspondence between Amini and the consulate.  *See* Compl.  Count I alleges a violation of the APA on grounds of unreasonable delay.  *Id.* ¶¶ 28–40; 5 U.S.C. § 706(1). Count II seeks a writ of mandamus to compel the defendants to adjudicate Amini's visa application.  Compl. ¶¶ 41–48.  Count III seeks attorneys' fees under the Equal Access to Justice Act.  *Id.* ¶¶ 49–51.  The plaintiffs seek declaratory and injunctive relief.  *Id.* at 12.

On December 23, 2024, the defendants moved to dismiss under Rules 12 (b)(1) and 12(b)(6).  Mot. to Dismiss, ECF No. 9 ("Mot."), asserting (i) that the plaintiffs have not identified any non-discretionary duty beyond the consulate's issuance of a 221(g) refusal, and (ii) that the consular non-reviewability doctrine bars their claim.  The plaintiffs opposed on January 20, 2025,

*see* Response to MTD, ECF No. 12 ("Opp'n"), and the defendants replied on January 27, 2025, *see* Reply, ECF No. 13.  The motion is now ripe.

## II.    LEGAL STANDARDS

### a.    Motion to Dismiss for Lack of Standing

A defendant in a civil action may move to dismiss a complaint for "lack of subject-matter jurisdiction," including a lack of Article III standing.  Fed. R. Civ. P. 12(b)(1).  A court considering such a motion must take all well-pleaded allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor.  *Sparrow v. United Air Lines, Inc.*, 216 F.3d 1111, 1113 (D.C. Cir. 2000).  "[A] court that is assessing a motion brought under Rule 12(b)(1) may look to documents outside of the complaint in order to evaluate whether or not it has jurisdiction to entertain a claim," including to "resolve factual disputes concerning jurisdiction."  *Doe v. Wash. Metro. Area Transit Auth.*, 453 F. Supp. 3d 354, 361 (D.D.C. 2020) (internal quotation marks and citations omitted).

### b.    Motion to Dismiss for Failure to State a Claim

A complaint is subject to dismissal if the defendant, by motion, demonstrates that a plaintiff's pleading "fail[s] to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  "To survive a motion to dismiss" under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  A claim is plausible on its face if it "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  A court evaluating a Rule 12(b)(6) "motion presumes that the complaint's factual allegations are true and construes them liberally in the plaintiff's favor."  *Alemu v. Dep't of For-Hire Vehicles*, 327 F. Supp. 3d 29, 40 (D.D.C. 2018).  However, "[a] court need not accept a plaintiff's legal

conclusions as true, nor must a court presume the veracity of legal conclusions that are couched as factual allegations." *Id.* (citing *Twombly*, 550 U.S. at 555). A court deciding a motion under Rule 12(b)(6) may also consider "documents attached to the complaint as exhibits or incorporated by reference, and matters about which the court may take judicial notice." *U.S. House of Reps. v. Burwell*, 130 F. Supp. 3d 53, 64 (D.D.C. 2015).

### c. Unreasonable Delay

The plaintiffs' lawsuit rests on the theory that the lack of resolution of Amini's visa application amounts to an unreasonable delay. In "extraordinary" cases, a district court can compel agency action if they find an official violated a "clear duty to act" and has "unreasonably delayed the contemplated action." *In re Core Commc'ns, Inc.*, 531 F.3d 849, 855 (D.C. Cir. 2008). The remedies available for such violation include issuing a writ of mandamus directing the official to undertake the withheld action, *see* 28 U.S.C. § 1361, and ordering declaratory or injunctive relief under the APA, *see* 5 U.S.C. § 706(1) (authorizing orders to "compel agency action unlawfully withheld or unreasonably delayed").

To secure either form of relief, the plaintiff must "assert[] that an agency failed to take a discrete . . . action that it is required to take." *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 64 (2004). In the context of mandamus, the plaintiff must show that the agency has violated "a crystal-clear legal duty" before the writ may issue. *In re Ctr. for Biological Diversity*, 53 F.4th 665, 670 (D.C. Cir. 2022) (quoting *In re Nat'l Nurses United*, 47 F.4th 746, 752 (D.C. Cir. 2022)). Under the APA, a successful claim for agency inaction requires the plaintiff to "identify a legally required, discrete act that the [agency] has failed to perform." *Montanans for Multiple Use v. Barbouletos*, 568 F.3d 225, 227 (D.C. Cir. 2009).

### III.    ANALYSIS

#### a.  Improper Defendants

The defendants contend that the Attorney General must be dismissed from the case because the Complaint does not contain plausible allegations that she plays any role in the adjudication of Amini's visa application.  Specifically, the defendants contend that "there are no factual allegations in the Complaint concerning the Department of Justice other than noting that Justice Department officials have certain roles in administering the immigration laws of the United States and perhaps stating suspicions that they play an additional role." Mot. at 11.  The defendants contend that such allegations are "insufficient to state a claim, especially when the INA makes clear it is exclusively a consular officer's job to approve or refuse visa applications"—and parenthetically suggest that this failure casts doubt on whether the plaintiffs have "standing to sue the attorney general."  *Id.* at 12 (quoting *Zakeri v. Blinken*, No. 23-cv-3162-TJK, 2024 WL 3273418, at *3 (D.D.C. July 2, 2024)).  As in previous visa-proceeding orders, the Court will construe the contention that the Attorney General has "no role" in adjudicating plaintiffs' visa applications as an Article III standing challenge targeting the requirements of traceability and redressability.  *Cf., e.g.*, *Momeni v. Blinken*, No. 23-cv-3421-RCL, 2024 WL 4332604, at *4 (D.D.C. Sept. 26, 2024) (same, regarding challenge to Secretary of State's role).  In other words, the Court understands the defendants to be contending that because the Attorney General plays no role in visa adjudications, the plaintiffs' injuries are not fairly traceable to any conduct undertaken by her, and so cannot be redressed by a court order directed at her.

The plaintiffs contend that the FBI, which reports to the Attorney General through the Deputy Attorney General, performs "background/security checks" of visa applicants.  Opp'n at 6. As the plaintiffs allege in their complaint, the Attorney General "is responsible for the completion of 'name checks' and other background investigations required for the adjudication of immigration

petitions and applications." Compl. ¶ 19.  Yet "[a]bsent" from the Complaint "are facts suggesting that the delays at issue *here* are caused by such security screening" or that the Attorney General could take any action to "hasten review" of Amini's application.  *Cf. Rashidi v. U.S. Dep't of State*, No. 23-cv-1569-JEB, 2023 WL 6460030, at *3 (D.D.C. Oct. 4, 2023) (addressing another agency). The Court agrees that, as in *Rashidi*, the plaintiffs' mere "insinuation" that the Attorney General "*might* be responsible for, and able to remedy, such delay[] is simply too speculative a basis" for Article III jurisdiction.  *Id.*  This is particularly so given that, as the defendants observe, the Attorney General's responsibilities under § 1735(a) have been transferred to the Homeland Security Secretary under the Homeland Security Act, citing 6 U.S.C. § 557.  *See* Mot. at 9.  The defendants say that the reference to the Attorney General in § 1735(a) is therefore an anachronism, and there is in fact no role for the Attorney General under that provision.  The plaintiffs have no response to this point, which would seem only to underscore the speculative nature of the alleged role of the Attorney General in visa processing.  On the foregoing bases, the Court will thus dismiss Defendant Bondi.

### b.  Non-discretionary consular duty

The thrust of the parties' dispute centers on whether the plaintiffs have identified a non-discretionary duty requiring the defendants to take further action on Plaintiff's visa application. For the plaintiffs to survive a motion to dismiss their claims for mandamus or APA relief, they must allege facts showing that the defendants have failed to perform an unmistakable legal duty. *See Ctr. for Biological Diversity*, 53 F.4th at 670 (mandamus relief requires showing violation of "a crystal clear legal duty"); *Montanans for Multiple Use v. Barbouletos*, 568 F.3d 225, 227 (D.C. Cir. 2009) (explaining that "threshold requirement for a § 706 failure-to-act claim" under the APA is "a legally required, discrete act that the [defendant] failed to perform").  "The legal duty must

be 'ministerial or nondiscretionary' and must amount to 'a specific, unequivocal command." *W. Org. of Res. Councils v. Zinke*, 892 F.3d 1234, 1241 (D.C. Cir. 2018) (quoting *Norton v. S. Utah Wilderness Alliance*, 542 U.S. 55, 63–64 (2004)).

At the outset, the parties spill much ink on the precedential weight of the D.C. Circuit's ruling in *Karimova v. Abate*, an unpublished per curiam decision by the D.C. Circuit. *See* No. 23-5178, 2024 WL 3517852 (D.C. Cir. July 24, 2024) (per curiam). The defendants contend that the Court is bound by *Karimova* as precedent, *see* Mot. at 13 & n.2, while the plaintiffs observe that several sessions of this Court have declined to follow *Karimova*, *see* Opp'n at 7.

The parties' dispute over the binding weight of *Karimova* is an unfortunate sideshow, as the defendants mistakenly overlook the narrowness of the D.C. Circuit's holding in that case and its lack of relevance here. In *Karimova*, the court was confronted with a narrow argument: that section 555(b) of the APA requires consular officers to "either issue . . . a visa or refuse [the] application, without then also placing it in administrative processing." *Id.* at *3. Section 555(b) provides that "each agency shall proceed to conclude a matter presented to it" "[w]ith due regard for the convenience and necessity of the parties or their representatives and within a reasonable time." 5 U.S.C. § 555(b). The D.C. Circuit concluded that section 555(b) was too "general[] and indistinct[]," to support concluding that the statute "plainly define[d] a "crystal clear legal duty." *Karimova*, 2024 WL 3517852, at *3, 4 (first quoting *Knable v. Wilson*, 570 F.2d 957, 960 (D.C. Cir. 1977), and then quoting *Ctr. for Biological Diversity*, 54 F.4th at 670).

The Court emphasized that its holding was limited to "Section 555(b)—and *only* Section 555(b)." *Id.* In other words, to the extent that a future plaintiff locates consular duty in another source of law, *Karimova* could not control the outcome of the case even if it were binding. As the defendants acknowledge throughout their reply brief, the plaintiffs rely on statutory and regulatory

authorities as the source of consular officials' applicable duty apart from section 555(b). And although the plaintiffs cite section 555(b) in their Complaint, *see* Compl. ¶¶ 2, 29, their briefing does not develop any argument based on that provision in their briefing to give the Court occasion to assess the applicability of *Karimova*'s holding to the facts of this case. So even if the Court granted the assumption that *Karimova* were *binding* precedent, as opposed to persuasive authority, its relevance to this case would be modest at best.

The Court thus turns to the further sources of law that the plaintiffs identify as supporting a consular duty to take further action on their visa application. The plaintiffs mainly cite another session of this Court, which held that INA regulations "require that a consular officer 'must . . . properly and promptly process a visa application' and either 'issue' or 'refuse' a completed visa application." *Haeri Mehneh v. Blinken*, No. 24-cv-1374-ZMF, 2024 WL 5116521, *6 (D.D.C. Dec. 16, 2024) (first quoting 22 C.F.R. § 41.106, then quoting *id.* § 41.121(a)). In other words, the plaintiffs argue that, in conjunction, these provisions confer a clear consular duty to process applications by either issuing or refusing a visa. Even the D.C. Circuit in *Karimova* agreed with that. *See* 2024 WL 3517852, at *2.

But the existence of a duty to issue or refuse a visa is not the question now before the Court; after all, there is no question that the Toronto consulate has already discharged its duty under 22 C.F.R. § 41.121(a) by refusing Amini's visa. *See* Compl. ¶¶ 24, 33. Rather, the plaintiff's core contention is that consular officials' duties go *beyond* refusal. So to prevail, the plaintiffs here— like the plaintiff in *Karimova*—must show that consular officers owe a duty to resolve administrative processing under § 221(g). *See* 2024 WL 3517852, at *3 (plaintiff needed to show consular duty to "either issue . . . a visa or refuse [the] application, without then also placing it in administrative processing").

The plaintiffs cite just one provision to that end: they say the defendants' duty to complete administrative processing of non-immigrant visa applications emanates from 22 C.F.R. § 42.81. Per that regulation, "[i]f the grounds of ineligibility may be overcome by the presentation of additional evidence and the applicant indicates the intention to submit such evidence, a review of the refusal may be deferred." 22 C.F.R. § 42.81(c). Under such circumstances, an applicant has one year to "adduce[] further evidence tending to overcome the ground of ineligibility on which the refusal was based," then "the case shall be reconsidered." *Id.* § 42.81(e). In other words, the plaintiffs identify regulatory provisions suggesting circumstances under which the State Department might be duty-bound to take further action on a refused visa.

But even if the Court were to assume, favorably to the plaintiffs, that § 42.81(e) creates a duty for the consulate to reconsider the grounds for refusal, a careful reading of that regulation shows that it does not apply here. To be eligible for reconsideration, the regulations require there to be something for the consular officer to reconsider—and the regulations make clear that is not always the case. Rather, the regulations differentiate between two categories of visa refusals: those for which "the ground of ineligibility may be overcome by the presentation of additional evidence," and those for which such ground "cannot be overcome by the presentation of additional evidence." *Id.* § 42.81(c).

The plaintiffs do not make any allegation or otherwise provide record materials suggesting that, as a factual matter, the Consulate refused Amini's visa based on grounds that "may be overcome by the presentation of additional evidence." *Id.* Rather, the 221(g) notice Amini received from the Toronto Consulate depicts a checked box next to an option stating that "[a]dditional administrative processing [was] required on your case" and specifically instructs him that "[n]o further action is required on your part." *See* Ex. E to Compl. That sentence appears

directly above an *unchecked* box next to an option that would alternatively direct the applicant to

"provide the following document(s) for review." *Id.* In other words, the agency apparently

determined that Amini was not eligible for reconsideration based on further factual submissions,

so § 42.81(e) simply does not apply. In any event, the regulations state that a "case shall be

reconsidered" only after the applicant "adduces further evidence" to rebut the ground for refusal.

*Id.* And no allegation or other evidence suggests that Amini has done so here. So even assuming

there was a nondiscretionary duty to reconsider, *see* discussion *infra*, without more, there is no

indication that consular officials have breached any such duty here.

      The cases plaintiffs cite do not support a ruling to the contrary. The plaintiffs' briefing

borrows the notion of a duty to reconsider from the decision in *Haeri Mehneh v. Blinken*, where

another session of this court adopted the plaintiffs' reading that "Section 42.81(e) of the INA

creates a nondiscretionary duty requiring consular officers to reconsider within a reasonable time

visa applications refused under Section 221(g) and placed under administrative processing." 2024

WL 5116521, at *6 (citing *Ghannad-Rezaie v. Laitinen*, 757 F. Supp. 3d 148, 153 (D. Mass. Nov.

21, 2024) (Saris, J.)). But the underlying district court ruling on which the *Haeri Mehneh* court

relied was materially distinct from the case here.[2] There, the district court concluded that "the

agency has a nondiscretionary duty to reconsider the refusal *when the applicant presents new

evidence* to overcome the basis for refusal." *Ghannad-Rezaie*, 757 F. Supp. 3d at 153 (emphasis

added). As discussed in the preceding paragraph, no such evidence has been submitted here, so

the reasoning guiding the court in *Haeri Mehneh* does not warrant relief in this case. And even if

---

[2] The court in *Haeri Mehneh* also acknowledged that other sessions within this district had concluded otherwise on the same question. *See* 2024 WL 5116521, at *6 (citing, as negative authority, *Yaghoubnezhad v. Stufft*, No. 23-cv-3094, 2024 WL 2077551, at *8 (D.D.C. May 9, 2024)).

the plaintiffs *had* submitted further evidence, the Court in *Ghannad* appears to have concluded

that further administrative processing was akin to "reconsidering the visa application." *Id.*

Other decisions relied on by the plaintiffs either assumed that there was a non-discretionary

duty to act on visa applications and proceeded to the merits, where the courts then denied the

plaintiffs' claims, or cited cases that did so. *See, e.g.*, *Ahmed v. Blinken*, 759 F. Supp. 3d 1, 10

(D.D.C. 2024) (quoting *Rashidian v. Garland*, No. 23-cv-1187-ACR, 2024 WL 1076810, at *5

(D.D.C. Mar. 8, 2024) ("[R]ather than wade into the dispute, the 'Court will assume without

deciding' that the plaintiffs have identified 'a discrete, required duty because, in any event,' their

claims fail on the merits." (citation omitted))); *Sereshti v. Gadiosi*, No. 24-cv-1288-BAH, 2024

WL 4625802, at *6 (D.D.C. Oct. 30, 2024)) (same, regarding argument that 8 U.S.C. § 1202(b)

compels resolution of administrative processing).  In other words, those cases did not render a

decision on the question presented here.

Moreover, the defendants have attempted to preclude that approach by expressly declining

to brief dismissal on the merits of the plaintiffs' unreasonable delay claims, which would be

governed by the so-called *TRAC* factor test set out in *Telecommunications Research & Action

Center* ("*TRAC*") v. *FCC*, 750 F.2d 70, 80 (D.C. Cir. 1984).  It was not so long ago that the

government would seek dismissal on the threshold issues presented in this case as well as on the

merits of the plaintiffs' mandamus and APA claims. *See, e.g.*, *Khan v. Baker*, No. 1:24-cv-271-

RCL, 2025 WL 958312 (D.D.C. Mar. 31, 2025); *Momeni v. Blinken*, No. 23-cv-3421-RCL, 2024

WL 4332604 (D.D.C. Sept. 27, 2024).  The government has consciously and expressly refused to

do so in the present case, explaining in a footnote that:

> Applying *TRAC* here would also lead to the dismissal of this suit.
> Should the Court deny this motion, the Government intends to move
> for judgment on the pleadings under *TRAC* as the complaint fails to
> state a claim for relief under the controlling standards of that case

> too. That said, the proliferation of challenges to visa applications
> refused under INA Section 221(g), especially in this district,
> warrants addressing dispositive issues of subject matter jurisdiction
> and consular nonreviewability at the threshold before considering
> the merits of contentions of unreasonable delay.

Mot. at 8 n.1.

This practice by the government appears to reflect a recent pattern in cases like this one — and has drawn criticism from at least one other session of this Court, which castigated the government's "intentional, piecemeal approach to challenge the pleadings in more than one round of briefing" for wasting the Court's time and resources and "impos[ing] needless burdens on all parties." *See Mahmoodi v. Altman-Winans*, No. 24-cv-2010-BAH, 2025 WL 763754, at *7 (D.D.C. Mar. 11, 2025). This Court concurs, and likewise subscribes to the view that the government's approach "denigrates the over-arching goals of the civil procedural rules 'to secure the just, speedy, and inexpensive determination of every action.'" *Id.* (quoting Fed. R. Civ. P. 1).

It thus may seem ironic that, despite that admonition, the government's gambit has paid off before this Court today. The Court has neither the time nor, in this posture, the patience to devote finite judicial resources to engineering arguments, even potentially decisive ones, that the government lacks the will to construct for itself. Thus, the instant motion addresses only the grounds the government briefed. *But see id.* at *8 ("[T]he Court may 'sua sponte* dismiss a claim pursuant to Rule 12(b)(6) without notice where it is "patently obvious" that the plaintiff cannot possibly prevail based on the facts alleged in the complaint.'" (quoting *Rollins v. Wackenhut Servs., Inc.*, 703 F.3d 122, 127 (D.C. Cir. 2012))).

But short of legislative or regulatory action, the Court expects that this occasion will not be the last on which the Court confronts visa-related requests for mandamus and APA relief. And at that future juncture, the government should expect cold welcome. A government lawyer "is the representative not of an ordinary party to a controversy," but the representative "of a sovereignty

whose obligation . . . is not that it shall win a case, but that justice shall be done." *Berger v. United States*, 295 U.S. 78, 88 (1935); *see also Freeport-McMoRan Oil & Gas Co. v. FERC*, 962 F.2d 45, 47 (D.C. Cir. 1992) (Mikva, C.J.) (endorsing same principle as to "the government's civil lawyers"). Stalling the presentation of straightforward merits arguments with the deliberate goal of forcing judicial officers to plod through the often-uncharted drudgery of parsing intricate immigration regimes falls regrettably short of that worthy calling.

## IV.    CONCLUSION

For the foregoing reasons, Counts I and II must be dismissed for failure to state a claim. And because those claims warrant dismissal, so too does Count III, the plaintiffs' claim for attorneys' fees under the Equal Access to Justice Act. *See Roberts v. Napolitano*, 792 F. Supp. 2d 67, 75 (D.D.C. 2011). Based on the foregoing, the Court will **GRANT** the motion by separate order and this case will be **DISMISSED**.


Date: _____9/26/25_____

_____
Royce C. Lamberth
United States District Judge